[No. 3179. Decided April 27, 1899.]

W. D. HOFIUS et al., Appellants, v. THE STIMSON MILL COMPANY, Respondent.

SALES — ACTION FOR PRICE — COUNTERCLAIM — PAYMENT OF FREIGHT CHARGES.

Where under a contract of sale, "freight paid," goods are consigned to the purchaser, who is notified to pay no freight bills thereon as the carrier had no claim against the consignor, the act of the consignee in paying the freight charges demanded by the carrier is at his own peril, and in an action against him for the price of the goods, he is not entitled to counterclaim for more than was actually due from the consignor for freight charges.

Appeal from Superior Court, King County.—Hon. WILLIAM McDONALD, Judge. Reversed.

Brady & Gay, and Milo A. Root, for appellants.

Will H. Thompson, for respondent.

The opinion of the court was delivered by

REAVIS, J.—Appellants commenced an action to recover $1,325.37, as the purchase price of certain railroad iron, rails, splices and bolts, which plaintiffs had sold and delivered to respondent at Ballard, King county, having the same transported over the Great Northern Railway from Spokane. Defendant answered, and admitted the allegations of the complaint, but set up an affirmative de-

fense by way of counterclaim, alleging it entered into contract with plaintiffs by which plaintiffs sold and delivered to defendant the railroad iron, etc., for which the defendant agreed to pay plaintiffs the sum of $34 per ton, amounting to $1,325.37; that, as a part of the contract, plaintiffs were to deliver the goods with freight and charges duly paid to the defendant, on defendant's sidetrack at its mill in Ballard; that, pursuant to the contract, plaintiffs delivered the goods to defendant at the place mentioned, but did not pay the freight and charges thereon or any part thereof, and defendant, in order to obtain possession of the goods, was compelled to pay, and did pay, the Great Northern Railway Company the freight and charges thereon, amounting to $708.25, and tenders in court $617.12, and asks that the amount paid as freight, $708.25, be allowed as a counterclaim against the purchase price due for the rails, splices, etc., of $1,325.37. Plaintiffs replied, denying that they did not pay the freight and denying that the defendant, in order to obtain possession of and use the goods was compelled to pay, or did pay, to the railroad company the freight thereon, or any sum thereon. The reply also alleges that plaintiffs had an offset, counterclaim and perfect defense to the claim of the railroad company for the freight and charges on said goods, and that the plaintiffs caused the property to be delivered to the defendant without defendant paying any of the charges for freight, and that the payment made by defendant was voluntary on its part, without the consent or authority of the plaintiffs, and against plaintiffs' wishes; that the defendant did not pay anything for the freight, or any charge of any kind on account thereof, prior to the commencement of this action; that any sum so paid by defendant was not a prerequisite to secure the possession of the property, but was upon an agreement on the part of the Great Northern Railway Company to de-

fend the action for the defendant and to refund all of the payments so made by defendant on account of freight. Plaintiffs also alleged that the sum of $708.25, charged by the railway company, was an exorbitant charge; that the railway company agreed with plaintiffs that, in consideration of the use of the track and rails of plaintiffs at Spokane, it would transport the rails to Ballard over its line at construction rates, which did not exceed the sum of $3.50 per ton, and that the railway company had used the track and rails of plaintiffs at Spokane for a year, and the reasonable value of such use was $1,000. The reply also stated that the railway company agreed to transport the rails and other iron as scrap iron; that the freight charged upon such goods, according to the published traffic list of the railway company, did not exceed the sum of $7.20 per ton at the time of transportation. It is also alleged that the sum charged by the railway company of $15 per ton is an exorbitant rate and excessive charge and contrary to the laws of the state; that said services were worth no greater sum than $3.50 per ton, and that the charge made for carrying and delivering the property by the railway company was unlawful and unjust discrimination against the plaintiffs, in that it was nearly twice the amount for which the company advertised to carry and deliver such property, and at which rate the company was carrying and delivering such property for other persons. Plaintiffs demurred to defendant's answer, and the demurrer was overruled.

At the trial the president of the defendant company was introduced as a witness to sustain its affirmative defense, the affirmative having been put upon the defendant at the trial. He testified, in substance, that the rails, etc., were unloaded off the cars at Ballard on April 10, 1897, which was Saturday; that the freight was not paid at the time; that the defendant company had an arrangement with the

railroad company's agent at Ballard that, whenever any freight was received for the company, the agent should put it on the company's siding, and when it was convenient for the agent he was to go to the office of the company for payment for the freight; that witness was anxious for the delivery of the rails and inquired of the agent several times about their arrival, directing the agent as soon as they arrived to have the rails switched on the siding belonging to defendant company; and that defendant unloaded the rails immediately after their arrival and took them away. The property was receipted for by defendant on Monday. Witness also stated that defendant was notified before the freight was paid not to pay the railway company any charge for the transportation. After receiving the notification (just how long it does not appear), defendant paid the amount demanded by the railway company, $708.25. Witness also testified that the defendant had no arrangement or contract with reference to the transportation of these rails; they were consigned to plaintiffs in care of the defendant. Witness also admitted that defendant was notified by plaintiffs that they did not owe the railway company anything for freight, and that they had a claim against the company; that the freight bill was higher than was agreed upon between plaintiffs and the railway company, and also that the railway company had agreed to carry the rails as scrap iron. In answer to the question whether the defendant had to pay the money in order to get possession of the rails, witness said:

" It was a question whether we were sued by the railway company. We owed the money to somebody and we were ready and willing to pay it, and the question that delayed a few days was, who we should pay to; and the station agent told us he was bound for the freight; that he had no right to let the property go without receiving payment."

Witness also testified that he consulted with the attorney

of the railway company, and that the attorney said the agent had no right to allow them to take the property without paying the freight; also that defendant was obliged to pay the freight as it had received the goods and taken them away, and that the case would be defended for defendant if it paid the freight, which it did.    The full amount of freight claimed by the railway company was then paid by defendant.    There was no agreement or contract between defendant and the railway company to pay any of the freight.    Witness did not tell the station agent when he received the freight that he would be responsible for it or pay for it.    At the conclusion of the evidence of this witness, plaintiffs moved for judgment, which motion was overruled.    Plaintiffs then tendered evidence to prove the allegations of their reply, which, upon objection, was rejected.    The court then instructed the jury to return a verdict in favor of the defendant.

It is maintained by counsel for the respondent that the consignment of the goods from Spokane to Ballard to plaintiffs in care of defendant imposed the legal obligation on defendant to pay the freight, and authority is cited tending to sustain this contention.    For the purpose of this case, conceding this position, what was the amount of freight due?    Certainly not any sum that might be proposed by the railway company.    In the absence of a contract for carrying, the amount due was the reasonable value of such transportation.    But plaintiffs assert there was nothing due for freight, because of an existing agreement between themselves and the railway company, and that by such agreement the rate of transportation was a much less sum than the freight charged, and other reasons are stated why the amount due for freight was exorbitant and incorrect.    Defendant did not choose to afford the opportunity to plaintiffs to determine the truth of their allegations.    If they were true, defendant was under no

liability for the freight. In any view, defendant was under no larger liability for the freight than the amount actually due. If, as intimated by counsel for defendant, the payment of the freight was a condition precedent to delivery, defendant was under no obligation to receive the iron rails, etc., unless the freight had been paid. It seems to have been assumed by the defendant that it must litigate with either the plaintiffs or the Great Northern Railway the amount due for freight. Defendant, at the time it was notified not to pay the freight, by plaintiffs, was a disinterested party to the controversy between the railway company and the plaintiffs, and we think its rights could have been fully protected by such a showing at the time to a court when sued by either party. But it chose to ally itself with, and assert the rights of, the railway company.

We have concluded that the plaintiffs are entitled to have determined the amount, if any, due from them for freight charges, and that the defendant made the payment of the charges demanded by the railway company at its peril as to the amount due, and the amount of freight due the railway company from the plaintiffs must be determined as the amount, if any, for which the counterclaim pleaded by defendant is sustained.

The case is therefore reversed and remanded for further proceedings in accordance herewith.

ANDERS and FULLERTON, JJ., concur.

DUNBAR, J.—I concur in reversing the judgment; but think judgment should be entered in favor of plaintiffs for the amount sued for.